IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:25-cr-010 |
| v. | ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| AJANG MALOU WOUR, | ) | |
| Defendant. | ) | |

**CONTENTS**

INTRODUCTION ................................................................................................. 1
THE OFFENSE .................................................................................................... 2
PROCEDURAL BACKGROUND ........................................................................ 3
VICTIMS AND RESTITUTION ........................................................................... 3
SENTENCING GUIDELINES .............................................................................. 4
OBJECTIONS ....................................................................................................... 4
THE COURT SHOULD DEPART UPWARD UNDER USSG §5K2.1 ............... 4
THE SENTENCE .................................................................................................. 7
CONCLUSION ...................................................................................................... 9

**INTRODUCTION**

Defendant Ajang Malou Wour (Wour) distributed thousands of fentanyl pills, including a handful of pills to a co-defendant that resulted in the overdose death of a customer. He has a prior federal drug conviction and discharged supervised release just months before he started dealing again. The Court should sentence him to 180 months in prison.

1

# THE OFFENSE

In summer 2023, Wour connected with a Minnesota-based source of supply for fentanyl pills. PSR ¶ 11. He had recently discharged federal supervised release for a prior drug crime—conspiracy to distribute methamphetamine. *Id.* ¶ 56. Wour began making frequent trips to Minnesota to pick up fentanyl. By January 2024, Wour was receiving thousands of pills at a time. *Id.* ¶¶ 13-14. By September 2024, Wour had switched to getting fentanyl powder, bringing back four or more ounces at a time. *Id.* ¶¶ 11, 29. All told, Wour obtained and distributed over 60,000 fentanyl pills and 40 ounces of fentanyl powder. *Id.* ¶ 11.

Wour had multiple distributors in Des Moines, including co-defendant Omar Nurani. Wour and Nurani started working together in or around spring 2024, with Wour supplying Nurani with fentanyl pills at that time. *See* PSR ¶¶ 11, 35. Nurani had his own customer base, and he'd get fentanyl pills or powder from Wour to sell to other distributors and users. *See id.* ¶¶ 11, 14, 15, 21-22, 27, 28, 29, 31, 36. Between May 2024 and their arrests in January 2025, Wour and Nurani exchanged thousands of text messages and arranged dozens and dozens of drug deals. *Id.* ¶ 36.

One of those deals happened on June 6, 2024. Early that morning, Wour was on his way back from a trip to Minnesota to get fentanyl pills. Nurani had a frequent customer, C.M., who asked Nurani for five pills. PSR ¶ 22. After C.M. ordered up, Nurani asked Wour if he was close to the city [Des Moines] because Nurani had a "couple plays" [customers or sales] waiting on him. *Id.* Wour said he was, and the two met up around 3:30 a.m., so Wour could give Nurani the fentanyl pills. *Id.*

Nurani told C.M. that he was meeting with his source (Wour). PSR ¶ 22. Nurani and C.M. had agreed on a price and quantity: five pills for $65. *Id.* Nurani instructed C.M. to send the money via CashApp to Nurani's girlfriend and gave C.M. that username. *Id.* C.M. sent $65 to Nurani's girlfriend. *Id.* Less than an hour later, Nurani arrived at C.M.'s apartment building. *Id.* After a short meeting—when Nurani gave her five fentanyl pills—C.M. went back into her apartment. *Id.* ¶23. C.M. died of a fentanyl overdose on or about June 8. *Id.* ¶¶ 24-25.

## PROCEDURAL BACKGROUND

Wour was charged by Indictment with conspiracy to distribute 400 grams or more of fentanyl (Count 1), distributing and aiding and abetting the distribution of fentanyl (Counts 2 and 3), and possession with intent to distribute fentanyl (Count 4). Wour pled guilty to Count 1 of the Indictment; Counts 2 through 4 will be dismissed at the time of sentencing. As part of the plea agreement, the government also agreed to withdraw the filing of the § 851 enhancement at the time of sentencing.

## VICTIMS AND RESTITUTION

As discussed further, C.M. is an identified victim. At the time of this filing, the government has received a victim impact statement from a family member, which is filed under seal as Government's Exhibit 2. Should the government receive any further written victim impact statements, it will provide them to the Court. One or more victims is expected to make an oral statement to the Court at the time of sentencing. At the time of this filing, the government has received no requests for restitution.

## SENTENCING GUIDELINES

The parties agree the presentence investigation report (PSR) correctly calculates the advisory guidelines range in this case as follows:

| | |
|---|---|
| Base Offense Level (§2D1.1(a)(5), (c)(3)) | 34 |
| Acceptance of Responsibility (§3E1.1) | -3 |
| Total Offense Level | 31 |
| | |
| Criminal History Category | II (3) |
| | |
| Guidelines Sentencing Range: | 121 to 151 months' imprisonment |

## OBJECTIONS

There are no factual objections to the PSR, and the Court can consider the offense conduct statement and other facts in imposing sentence.[1]

## THE COURT SHOULD DEPART UPWARD UNDER USSG §5K2.1

Wour objects to the application of USSG § 5K2.1, which contemplates an upward departure from the guidelines range where death resulted from the defendant's conduct. Notably, Wour does not object to any of the underlying facts that would support such a departure:

- On June 6, 2024, Wour provided fentanyl pills to co-defendant Omar Nurani.

- That same day, Nurani sold five of the fentanyl pills to victim C.M.

- C.M. ingested the fentanyl pills received from Nurani (and sourced by Wour), and C.M. died as a result.

---

[1] Wour had initially objected to clarify his immigration status. The PSR was updated to reflect that, although Wour had been ordered removed following his release from prison on his prior federal drug conviction, he was granted a deferral of removal. PSR ¶ 78.

4

Plainly put, Wour does not dispute that he sold fentanyl pills that ultimately resulted in C.M.'s death. Although Wour may not have intended C.M.'s death, he put "into motion a chain of events that risk[ed] serious injury or death." *United States v. Diaz*, 285 F.3d 92, 101 (1st Cir. 2002). An upward departure is warranted.

In determining the extent of the departure, the Court should consider, "the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury." USSG § 5K2.1.

With respect to the latter concern: the current guidelines simply don't reflect the risk of personal injury. Rather, the guidelines in this case are driven exclusively by the drug quantity attributed to Wour—the amount of fentanyl he put into the community. The guidelines specifically contemplate the appropriate base offense level where death results from a defendant's conduct: 38. A base offense level short of that necessarily fails to capture the loss of life.

The greater driver, however, is Wour's incredibly dangerous and knowingly risky conduct. In this instance, he supplied fentanyl to Nurani, knowing that Nurani was going to sell it to other customers and likely users. PSR ¶ 22 (Nurani messaged Wour, "I got a couple plays [customers] waiting on me" and a few minutes later, "wya [where you at] too my guy I have some plays [customers] who stayed up with me total 160 [$160]"). Wour knew the dangers associated with fentanyl use; he knew of others who have overdosed from ingesting drugs and has personally administered NARCAN to three people who have overdosed on opiates. *See* GX 1 (pertinent excerpts from

5

report of Wour's post-*Miranda* interview). With every pill or powder he sold, Wour knowingly risked the death of user-customers.

Courts have routinely applied and affirmed upward departures under §5K2.1 in similar circumstances. *See, e.g.*, *United States v. Watley*, 46 F.4th 707, 716-17 (8th Cir. 2022) (affirming an upward departure of seven levels where the defendant's drug distribution "played a central part" in the victim's death); *United States v. Nossan*, 647 F.3d 822, 826-27 (8th Cir. 2011) (affirming an upward departure from a guidelines range of 10 to 16 months to a sentence of 60 months, where the defendant's drug distribution caused the victim's death); *United States v. Mousseau*, 517 F.3d 1044, 1048-49 (8th Cir. 2008) (affirming an upward departure from a guidelines range of 70 to 87 months to a sentence of 120 months, where the defendant's distribution of an unknown substance, believed to be narcotics, caused the victim's death); *United States v. Sweger*, 413 Fed.Appx. 451, 455-56 (3d Cir. 2011) (affirming an upward departure from a base offense level of 18 to a base offense level of 38, where the defendant's distribution of fentanyl-laced heroin caused the victim's death); *United States v. Grover*, 486 F.Supp.2d 868, 886-88 (N.D. Iowa 2007) (departing upward from a base offense level 14 to a base offense level of 24, where the defendant's distribution of heroin caused the victims' death); *United States v. Millikan*, S.D. Iowa Criminal No. 4:22-cr-008-SMR (departing upward from a guidelines range of 10 to 16 months to a sentence of 24 months, where the defendant's distribution of fentanyl caused the victim's death).

Given the dangerousness and recklessness of Wour's conduct, an upward departure to 180 months in prison is warranted.

## THE SENTENCE

Even if the Court declines to depart upward, it should impose a sentence of 180 months in prison because that sentence is "sufficient but not greater than necessary" to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a).

First, C.M.'s death, and Wour's role in it, warrants a substantial upward variance from the guidelines range. *See, e.g., United States v. Reif*, 920 F.3d 1197, 1198 (8th Cir. 2019) (affirming an upward variance from a guidelines range of 15 to 21 months to a sentence of 96 months where the defendant's distribution of heroin caused the victim's death); *United States v. Denson*, 967 F.3d 669, 709 (8th Cir. 2020) (affirming an upward variance from a guidelines range of 210 to 262 months to a sentence of 292 months where the two victims connected to the conspiracy the defendant was involved in died as a result of their drug use); *United States v. McKinnie*, 21 F.4th 283, 288-290 (4th Cir. 2021) (affirming an un upward variance from a guidelines range of 21 to 27 months to a sentence of 120 months because the defendant's distribution of fentanyl contributed to the victim's death); *United States v. Hudgens*, 4 F.4th 352, 358-59 (5th Cir. 2021) (affirming an upward variance from a guidelines range of 120 to 121 months to a sentence of 240 months where the defendant's relevant conduct included supplying his girlfriend with methamphetamine and contributed to her death); *United States v. Hawkins*, S.D. Iowa Criminal No. 4:24-cr-114-SMR (imposing an upward variance from a guidelines

7

range of 21 to 27 months to a sentence of 60 months because the defendant's distribution of fentanyl caused the victim's death); *United States v. Clark*, S.D. Iowa Criminal No. 4:23-cr-137-SMR (imposing an upward variance from a guidelines range of 24 to 30 months to a sentence of 48 months because the defendant's distribution of a heroin and fentanyl mixture contributed to the victim's death).

But that was just one distribution of many. For eighteen months, Wour pumped thousands and thousands of fentanyl pills into Iowa. He repeatedly traveled to Minnesota to obtain fentanyl—first pills, then powder—and brought it back to Des Moines. He had many local distributors, including co-defendant Nurani. Wour's one and only job was to sell drugs. The danger that job posed cannot be overstated.[2]

Wour's personal history and characteristics are enigmatic. A Sudanese refugee, Wour undoubtedly endured significant childhood trauma. But he immigrated to the United States at age 16, and he thrived. He is smart and articulate. He graduated high school with a 3.58 G.P.A. His siblings are all accomplished professionals. He has zero substance abuse history. Yet, at the age of 33, he started distributing methamphetamine. He was federally indicted, pled guilty, and was sentenced to 50 months in prison. He was released to federal supervision in 2019 and served a three-year term. He had no violations or issues

---

[2] Between 2016 and 2021, the rate of fentanyl overdose deaths increased by 279%, from 5.7 per 100,000 standard population in 2016 to 21.6 in 2021—a growth rate and death rate that far surpass any of the other drugs reviewed. *See* Spencer et al., *Estimates of Drug Overdose Deaths Involving Fentanyl, Methamphetamine, Cocaine, Heroin, and Oxycodone: United States 2021*, Vital Statistics Rapid Release, available at https://www.cdc.gov/nchs/data/vsrr/vsrr027.pdf.

whatsoever on supervised release. And then, in the summer of 2023—just months after discharging federal supervised release—he started dealing fentanyl. By the time he was arrested, he had personally brought back and distributed over 60,000 fentanyl pills in Des Moines.

The length and dangerousness of Wour's fentanyl dealing, his role in the death of C.M., and his criminal history warrant a significant term of imprisonment.

## CONCLUSION

The Court should impose a sentence of 180 months' imprisonment.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ Mikaela J. Shotwell*
Mikaela J. Shotwell
Ryan W. Leemkuil
Assistant United States Attorneys
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Email: Mikaela.Shotwell@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

\_\_\_ U.S. Mail  \_\_\_ Fax  \_\_\_ Hand Delivery

 X  ECF/Electronic filing  \_\_ Other means (email)

UNITED STATES ATTORNEY
By:  */s/Mikaela J. Shotwell*